IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| DANNY OKAWA,<br><br>       Plaintiff,<br><br>   vs.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security<br>Administration,<br><br>       Defendant. | Civil No. 25-00241 MWJS-WRP<br><br>ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |

## INTRODUCTION

Danny Okawa is a retired veteran of the United States Air Force who sought Social Security disability benefits because of spinal, knee, hip, wrist, and other severe impairments.  In written and oral testimony, he explained that these impairments severely restricted his ability to work.

The Administrative Law Judge (ALJ) on Okawa's case concluded that his pain testimony was not credible and denied his application.  But in reaching that conclusion, the ALJ offered no reason to discredit five medical reports from an Advanced Practice Registered Nurse that supported Okawa's claim.

Because the court concludes that the ALJ could not reject Okawa's application without offering valid reasons for rejecting these reports (or at least explaining why the ALJ did not believe it necessary to consider the reports), it REVERSES the ALJ's decision and REMANDS for further administrative proceedings.

## BACKGROUND

Okawa applied for Social Security disability and disability insurance benefits on January 25, 2023, contending that he had become disabled beginning on July 31, 2022. Dkt. No. 9-1, at PageID.35 (Administrative Record (AR) at 17). After his application was denied on the papers, Okawa requested a hearing before an ALJ.

1.  The hearing took place on August 14, 2024, and both Okawa and a vocational expert testified. *Id.* at PageID.50–98 (AR at 32–80). In his testimony, Okawa explained that he served in the Air Force from 1978 until 2002, after which he held civilian employment. *Id.* at PageID.56–58 (AR at 38–40). But he was forced to stop working in light of his knee pain ("it's bone on bone right now"), back and neck pain ("my body's actually fusing my neck together"), pain in his fingers and carpal tunnel in the right wrist ("[b]oth wrists are shot" and "I can't even close a fist"), plantar fasciitis ("when I go to the store and walk around, every, maybe 15 minutes, I've got to sit down"), and other ailments. *Id.* at PageID.85, 90, 91 (AR at 67, 72, 73).

The vocational expert testified that Okawa could no longer do past work, but that under certain assumptions about his remaining physical capabilities, a hypothetical

2

person in Okawa's position could still work as an internal auditor or as a data entry clerk. *Id.* at 70–71 (AR at 60–61). Yet upon questioning by the ALJ, the vocational expert acknowledged that if this hypothetical person were found not to be able to stand and walk for more than "two out of eight hours" or to kneel—a conceivable conclusion here in light of the testimony about Okawa's back, knee, and other physical ailments—then he could not work as an internal auditor. *Id.* at PageID.95 (AR at 77). And under questioning by Okawa's attorney, the vocational expert acknowledged that if the hypothetical person were "limited to handling and fingering frequently," they would not be able to work as a data entry clerk, either. *Id.* at PageID.96–97 (AR at 78–79).

2. Following the hearing, the ALJ issued a written decision denying Okawa's application. *Id.* at PageID.32–49 (AR at 14–31).

The ALJ found that Okawa did have a number of "severe impairments: degenerative joint disease of the left knee; calcific plantar fasciitis, right greater than left; degenerative disc disease of the cervical spine, with history of fusion at C2-C4; degenerative joint disease of the left shoulder; degenerative joint disease of the left wrist; obesity; obstructive sleep apnea; high cholesterol." *Id.* at PageID.37 (AR at 19). The ALJ also found that Okawa suffered from other impairments that did not qualify as severe: "headache, cataract, hypertension, gastrointestinal disorder, chronic liver disease, and degenerative joint disease of the bilateral hips." *Id.* at PageID.38 (AR at 20).

3

Nonetheless, the ALJ rejected Okawa's testimony about the severity of his symptoms from these impairments. As the ALJ put it, while Okawa's "medically determinable impairments could reasonably be expected to cause the more than minimal symptoms," Okawa's "allegations concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* at PageID.39 (AR at 21).

The ALJ offered several reasons to support that conclusion: x-ray imaging did not "demonstrate[] abnormalities that would interfere with light work," *id.*; Okawa had "continued to demonstrate adequate strength" for work greater than what Okawa had suggested, *id.*; Okawa's symptoms, "while requiring treatment, have largely been susceptible to that treatment without complication," *id.*; a doctor had concluded Okawa "only required conservative measures, including pain medication as needed," *id.* at PageID.40 (AR at 22); "the record reflects adequate symptom management, including control over pain," *id.*; "[c]ontrary to reports of limited use of the left hand for daily activities or inability of the claimant to remain on his feet for more than 15 minutes, the medical evidence demonstrates adequate strength, range of motion, walking ability, and control over pain" for a greater degree of work than Okawa had suggested, *id.*; Okawa's plantar fasciitis was "managed with treatment and medical devices," *id.*; and "[c]ontrary to [Okawa's] reported concerns over pain during the hearing, medical

4

records reflect significant pain improvement with treatment and deferral of surgeries that have the potential to further relieve symptoms," *id.* at PageID.41 (AR at 23).

As a result, the ALJ concluded that Okawa had a greater ability to work than he had testified. In more technical terms, the ALJ found that Okawa had the "residual functional capacity" to perform "light work" with certain restrictions. *Id.* at PageID.38 (AR at 20). This meant that Okawa was able to work either as an internal auditor or as a data entry clerk, positions which both exist in significant numbers in the national economy. *Id.* at PageID.43 (AR at 25). And, the ALJ concluded, Okawa did not qualify as disabled under the Social Security Act because of this ability to work. *Id.*

But something was missing from ALJ's written decision: it nowhere recognized that Okawa's testimony was not the only available evidence supporting his application. Advanced Practice Registered Nurse (APRN) Syriece Jones Francis completed five forms documenting Okawa's diagnoses and clinical findings. *See id.* at PageID.1390–1401, 1402–24, 1425–37, 1438–48, 1449–61 (AR at 1372–83, 1384–1406, 1407–19, 1420–30, 1431–43). Taken together, the conclusions expressed in these forms, if credited, would have supported Okawa's contention that he could not perform work as either an internal auditor or a data entry clerk. And so it was not enough for the ALJ to reject the credibility of Okawa's testimony; to conclude that Okawa was not disabled, the ALJ also had to contend with APRN's reports. Yet while the ALJ recognized the existence of

5

these reports (and admitted them into the administrative record), she did not offer any reasons for rejecting their stated conclusions.

3. Okawa asked the Social Security Administration's Appeals Council to review the ALJ's decision, but the Appeals Council denied his request, *id.* at PageID.19 (AR at 1), making the ALJ's decision the Commissioner's final decision. This timely appeal followed.

## STANDARD OF REVIEW

The Commissioner's disability determination must be affirmed unless "it is either not supported by substantial evidence or is based upon legal error." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). This standard is deferential, requiring "only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (cleaned up).

But the court may only defer to those reasons the Commissioner—here, acting through an ALJ—actually offers. "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). That means a district court cannot affirm the Commissioner based merely on "what it assume[s] the ALJ to have determined." *Id.* at 1226.

6

## DISCUSSION

One of Okawa's contentions is that the ALJ failed to offer valid reasons to reject the medical opinions expressed in APRN Francis' five reports. Indeed, as the Commissioner concedes, the ALJ offered no reasons for rejecting their conclusions. Answering Brief (AB) at 5–6.

This alone is sufficient reason to reverse the ALJ's decision. When, as here, an application for disability benefits is filed after March 27, 2017, current Social Security Administration regulations require an ALJ to consider, among other things, the "supportability" and the "consistency" of medical opinions in the administrative record before deciding whether they are persuasive. 20 C.F.R. § 404.1520c; *see generally Wade v. O'Malley*, Civil No. 23-00350, 2024 WL 3248021, at *3 (D. Haw. Feb. 16, 2024) (cleaned up) . "Supportability" is "the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Wade*, 2024 WL 3248021, at *4 (cleaned up). It is a question of how well a medical opinion supports itself. "Consistency," by contrast, focuses on "whether the medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (cleaned up). That assessment asks how well a medical opinion is supported by other evidence in the administrative record. Importantly, ALJs must *explain* how they considered the supportability and consistency factors, and their explanations must be supported by substantial evidence. *Id.*; *see also Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th

Cir. 2024) ("ALJs must explain how persuasive they find the medical opinion by expressly considering the two most important factors for evaluating such opinions: 'supportability' and 'consistency.'").  That is precisely what the ALJ did not do here.

The Commissioner resists this conclusion, contending that the ALJ "reasonably declined to discuss" APRN Francis' five reports.  AB at 5.  Although the Commissioner acknowledges that an ALJ must offer sufficient reasons to reject medical opinions, he argues that an ALJ need not discuss "a claimant's own description of his or her physical or mental impairment," as those are considered merely "[s]ymptoms" rather than medical opinions under the relevant regulations.  *Id.* at 5.  And in the Commissioner's view, APRN Francis' reports did not contain any relevant medical opinions, but rather merely summarized the substance of Okawa's own self-reports.  *Id.*

It is certainly possible that, on remand, the ALJ could conclude that APRN Francis' reports do not include medical opinions, but that they instead offer only a recounting of what Okawa reported.  As the Commissioner notes, each of APRN Francis' reports begins its description of Okawa's symptoms with the phrase, "Veteran reports difficulty . . ."  *Id.* at 6.  For example, one of APRN Francis' reports states that "Veteran reports difficulty with typing, opening jars, grabbing stuff, and doing household chores."  Dkt. No. 9-1, at PageID.1418 (AR at 1400).  The remainder of the reports use similar phrasings.  If the ALJ were to conclude that these reports merely contained summaries of Okawa's own statements—and no independent evaluative

8

work or opinions from APRN Francis—then the ALJ could possibly reject the reports on the ground that they were "premised to a large extent upon the claimant's own accounts of his symptoms and limitations," which the ALJ had already "discounted." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (cleaned up).

The problem with the Commissioner's argument, however, is that the ALJ's written decision does not say the ALJ rejected APRN Francis' reports on the ground that they merely summarized Okawa's self-reports.  It is black letter law that a court must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ." *Bray*, 554 F.3d at 1225.  While the Commissioner offers a plausible assumption about the ALJ's thought process, the court cannot accept "*post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Id.*

Granted, the Ninth Circuit's precedent does permit a court to affirm when "the agency's path may be reasonably discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (cleaned up).  But the court cannot, on this record, reasonably discern that the ALJ truly did consider APRN Francis' reports, let alone that the ALJ (implicitly) reached the conclusion that those reports lacked any medical opinions.  While the reports appear to offer some support for a conclusion along those lines, they surely need not be interpreted that way.  As Okawa correctly points out, the forms at issue are Disability

9

Benefits Questionnaires that ask whether Okawa's conditions affect his "ability to perform any type of occupational task." Dkt. No. 9, at PageID.1397, 1418, 1436, 1447, 1460 (AR at 1379, 1400, 1418, 1429, 1442). In response to this question on each form, APRN Francis answered, "Yes." *Id.* These answers may fairly be understood to constitute APRN Francis' medical opinions. The fact that APRN Francis heavily relied on Okawa's self-reports to defend these opinions could serve as a reason to discredit them. But it does not conclusively show that they are not opinions at all.

Nor can the court say, on this record, that the ALJ would reject the conclusions memorialized in APRN Francis' reports if they were fairly considered. The ALJ did offer a long list of reasons for rejecting Okawa's testimony. *See supra* p.4. But it is one thing to reject a claimant's testimony standing alone, and quite another to reject it when it is backed by the opinion of a medical source. Nothing in the ALJ's written decision answers whether the ALJ would take the latter step.

\*    \*    \*

In short, a remand for further proceedings is necessary. The Commissioner concedes that the ALJ was legally required to offer sufficient reasons for rejecting any medical opinions in the record. And the Commissioner does not dispute that the ALJ offered no such reasons here. While the Commissioner contends that APRN Francis' reports are best read as not including any medical opinions, the court cannot say on this record that the ALJ herself reached that conclusion. Nor can the court say that the ALJ's

10

reasons for rejecting Okawa's self-reports would readily support rejecting the independent medical opinions of a medical source, if the ALJ were to understand the reports that way.  Under these circumstances, the court cannot affirm the ALJ's decision.

Okawa makes other arguments in support of a remand.  But the court need not, and so does not, resolve them at this time.  *Accord Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (remanding for one reason and "declin[ing] to reach [an] alternative ground").

## CONCLUSION

For the foregoing reasons, the Commissioner's decision denying Okawa's applications for Social Security disability and disability insurance benefits is REVERSED and the case is REMANDED for further administrative proceedings consistent with this order.

IT IS SO ORDERED.

DATED:  January 8, 2026, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

---

Civil No. 25-00241 MWJS-WRP, *Danny Okawa v. Frank Bisignano*; ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS